**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| **MARK KUFEL,** | |
| *Plaintiff*, | |
| v. | |
| **BAPTIST HEALTH SOUTH FLORIDA, INC.** | |
| 6855 Red Road, Suite 600 | |
| Coral Gables, FL 33143 | |
| **Serve Registered Agent:** | |
| **David R. Friedman** | **Case No. _____** |
| 6855 Red Road, Suite 500 | |
| Coral Gables, FL 33143 | **JURY TRIAL DEMANDED** |
| **OB HOSPITALIST GROUP, LLC** | |
| 777 Lowndes Hill Road | |
| Building 1 | |
| Greenville, SC 29607 | |
| **Serve Registered Agent:** | |
| **NRAI Corporate Services, Inc.** | |
| 1200 South Pine Island Road | |
| Plantation, FL 33324 | |
| *Defendants*. | |

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Mark Kufel, M.D. brings this civil complaint alleging unlawful discrimination

against Defendants Baptist Health South Florida, Inc. and Ob Hospitalist Group, LLC for

violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; retaliation in

1

violation of the False Claims Act, 31 U.S.C. § 3730(h); and for tortious interference of a valid contract under Florida law.

## PARTIES

1.      Plaintiff Mark Kufel is a United States citizen domiciled in Miami, Florida.

2.      Defendant Baptist Health is a Florida not-for-profit corporation with a principal place of business in Coral Gables, Florida.

3.      Defendant Ob Hospitalist Group ("OBHG") is a Florida Limited Liability Company with a principal place of business in Greenville, South Carolina.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1331 because Dr. Kufel's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h); and 28 U.S.C. § 1367 because Dr. Kufel's state law claim arises out of the same nucleus of operative facts and form part of the same case or controversy as the federal question under Article III of the United States Constitution.

5.      This Court has personal jurisdiction over Defendant Baptist because it maintains its headquarters in this judicial District.

6.      This Court has personal jurisdiction over Defendant OBHG because it is incorporated in and regularly conducts business within this judicial District.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the unlawful employment practices occurred within this judicial district, the primary location of Dr. Kufel's employment with Baptist Health and Ob Hospitalist Group.

## ADMINISTRATIVE EXHAUSTION

8.      On April 16, 2020, Dr. Kufel timely filed a charge of discrimination against OBHG and Baptist with the Equal Employment Opportunity Commission.

9.      Dr. Kufel received a Notice of Right to Sue on August 27, 2020, from the Equal Employment Opportunity Commission and properly exhaustive his administrative remedies.

## FACTUAL ALLEGATIONS

10.      Dr. Kufel is a board certified, licensed physician and surgeon with over twenty-five (25) years of experience working in clinic and hospital environments.

11.      Dr. Kufel has pursued a medical career as an Obstetrician and Gynecologist ("OB/GYN") since 1994.

12.       Dr. Kufel identifies as a gay man and is a resident of Miami-Dade County, Florida.

13.      On August 9, 2017, Dr. Kufel signed an employment agreement with OBHG to provide services at Baptist, a third-party hospital facility.

14.      OBHG contracts with various hospital systems, such as Baptist, to provide hospitals with OB/GYN physicians.

15.      Dr. Kufel began working at Baptist as an OB/GYN Hospitalist in or about September 2017.

16.      Baptist is a nonprofit organization that receives Medicare and Medicaid funding through contracts and grants provided by the federal government.

17.      As an OB/GYN Hospitalist, Dr. Kufel's main duties involved managing the OB Emergency Department ("OBED"); monitoring and treating expectant mothers during

pregnancy, childbirth, and postpartum; screening for certain health issues; and diagnosing and prescribing treatments for various medical conditions.

18.     Dr. Kufel's duties also involved responding to emergency consultation requests from physicians at Baptists' Emergency Room ("ER"), performing emergency gynecological and obstetrical surgery as needed, and managing inpatient consults when appropriate.

19.     Dr. Kufel achieved high performance ratings at Baptist, received performance bonuses, and was part of the only team that earned OBHG a $100,000.00 bonus based on performance.

20.     Dr. Sergio Segarra is the former Chief of the Emergency Department ("ED") at Baptist.

21.     Issues related to Baptist' ER practices and procedures became evident to Dr. Kufel when ER physicians frequently called physicians from the OB/GYN department for emergency consultations, management questions, or simple advice.

22.     On one occasion, an ER doctor called Dr. Kufel for an emergency consultation regarding a patient who was twenty-eight (28) weeks pregnant.

23.     When Dr. Kufel arrived at the ER, the patient appeared visibly blue while the technician was still in the process of completing an ultrasound.

24.     Dr. Kufel immediately transported the patient to the Labor and Delivery department where the patient ultimately had to undergo a hysterectomy, which is the surgical removal of the uterus. Although the patient survived the medical procedure, her baby died as a result. The patient should have been taken immediately to Labor and Delivery, which might have saved the infant.

25.     On another occasion, in or about September or October 2019, a rape victim went over twenty-four (24) hours without a forensic or pelvic examination after being admitted from the ER because there were no certified physicians available to perform the requisite forensic examination.

26.     A certified physician to perform the forensic exam was located twenty-four (24) hours after this patient was admitted from the ER.

27.     In other cases, ER doctors admitted or intended to admit patients without proper medical justification. ER doctors frequently fabricated clinical scenarios which favored admission over outpatient management. Dr. Kufel learned about Baptists' improper and inconsistent admitting practices shortly after he started working at Baptist.

28.     For example, on one occasion an ER doctor called Dr. Kufel for an emergency consultation about a patient with pelvic inflammatory disease, or "PID."

29.     Dr. Kufel objected to admitting this patient because it was medically unnecessary. Some patients with PID can receive the same medical treatment as outpatients, but in this case the patient did not have PID.

30.     In or about October 2019, an ER doctor called Dr. Kufel for advice about a patient in the ER for hemorrhaging due to a miscarriage.  Dr. Kufel believed the extent of his involvement with this patient was only to provide his medical opinion to the ED physician, and told the ED physician to call Dr. Kufel if she had additional concerns.

31.     However, Dr. Segarra, called to inform Kufel that the hemorrhaging patient had been left unattended in the ER because the covering ER physician went home shortly after Dr. Kufel received the initial call.

32.     Dr. Segarra berated Dr. Kufel and blamed him for leaving the hemorrhaging patient at the ER unattended and began screaming at Kufel over the phone.

33.     Dr. Segarra questioned Dr. Kufel's ability to read, called him an idiot, and referred to Dr. Kufel as a "homo" and threatened to "have [Kufel] fired" and "have [his] contract pulled first thing tomorrow morning" or words to that effect.

34.     Dr. Kufel submitted a confidential incident report on October 17, 2019, concerning Dr. Segarra's threat to "have [Kufel] fired" and to "have [his] contract pulled."

35.     Dr. Kufel also complained about Dr. Segarra's inappropriate behavior, which was insulting, belittling, and unprofessional. However, Dr. Kufel never received any update from Baptist about his incident report.

36.     Dr. Kufel sent an email to Dr. Larry Spiegelman, Chair of the OB/GYN department, about Dr. Segarra's threat to "have [Kufel] fired" and Segarra's inappropriate behavior, which also violated the medical by-laws of the hospital.

37.      Dr. Spiegelman advised Dr. Kufel not to worry about Dr. Segarra's threat.  Dr. Spiegelman assured Kufel that Dr. Spiegelman always "had Dr. Kufel's back" with respect to the ED. These sentiments were echoed by Dr. Moises Lichtinger, the lead physician from Dr. Kufel's former group practice.

38.     Dr. Lichtinger subsequently told Dr. Kufel that Dr. Segarra admitted to acting inappropriately towards Dr. Kufel and got emotionally involved.

39.     In or about October 2019, Dr. Kufel refused to sign off on a patient's admission to the ER because there was no proper medical basis for admitting the patient. Dr. Kufel also objected to the ER's routine practice of admitting patients without proper medical diagnoses

6

because admitting patients without a proper medical basis because would lead to Medicare or Medicaid fraud.

40.     Dr. Kufel was concerned that OB/GYN physicians were being forced to take care of patients beyond their scope of practice and training.

41.     Baptist required OB/GYN physicians to fill out documents for patients in the OBED that had not been cared for by OB/GYN physicians or fabricate a diagnosis to justify patient admission to the OBED or Labor and Delivery ("L&D")

42.     On one occasion, Baptist kept a patient locked in the antepartum unit against her wishes and Dr. Kufel's orders. Shortly after, Dr. Kufel began refusing to sign off on the patient admission to the ER or OBED and began documenting irregularities in patient care.

43.     On December 29, 2019, two labor patients came into the OBED around 4:30 am and one more shortly after. After receiving report from the nurses regarding their history and exam, Dr. Kufel concurred with the nurses' suggestion to ambulate the patients for several hours in order to determine if they were in active labor.

44.     Dr. Kufel asked the OBED nurses to inform him when the patients completed ambulating for the purpose of re-examining them.  However, because the patients finished ambulating near the start of the shift transition hour, 7:00AM, Dr. Moises Lichtinger would oversee both patients.

45.     Dr. Kufel documented a preliminary note in the patient chart to help Dr. Lichtinger determine the patients' condition on presentation to the OBED.

46.     Dr. Kufel called Dr. Lichtinger to sign out as well as to inform Dr. Lichtinger about the patients who were ambulating. Dr. Lichtinger informed Dr. Kufel he had the patients under his watch. Dr. Kufel went home after confirming the same with Lichtinger.

47. On December 30, 2019, after Dr. Kufel completed his twenty-four (24) shift, he received a text message from Dr. Lichtinger after he arrived home but fell asleep before responding to Dr. Lichtinger's message.

48. Dr. Kufel was later informed by text message from Dr. Lichtinger, that nurses complained about Kufel "refusing" to see the labor and delivery patients who came into to the OBED a few hours earlier."

49. Dr. Kufel subsequently learned by text message from Dr. Lichtinger, about Dr. Segarra's involvement in the unfolding situation. Dr. Kufel received a call from a partner informing Dr. Kufel that he had been terminated from Baptist.

50. The following day, on or about December 31, 2019, Dr. Kufel received a call from OBHG informing Dr. Kufel that, upon Baptist's request, OBHG suspended his employment without pay.

51. At the end of OBHG's internal investigation, OBHG informed Dr. Kufel that it did not find any wrongdoing on Dr. Kufel's part. OBHG could not provide Dr. Kufel with any justification for his suspension.

52. OBHG and Baptist unlawfully discriminated against Dr. Kufel on the basis of his sex when OBHG and Baptist suspended Kufel's employment without pay.

53. OBHG and Baptist unlawfully retaliated against Dr. Kufel for making protected disclosures about improper admitting practices which Dr. Kufel believed constituted Medicare or Medicaid fraud.

54. Baptist intentionally interfered with the contractual relationship between Dr. Kufel and OBHG.  By request from Baptist, OBHG placed Dr. Kufel on administrative leave

without pay whereby he was not allowed to work and lost wages he is entitled to under his employment agreement.

55.     As the result of OBHG's and discriminatory and retaliatory actions, Kufel has sustained economic damages and mental anguish, and will continue to sustain damages into the foreseeable future.

**COUNT I**
**Title VII Sex Discrimination**
**42 U.S.C. § 2000e-2**
**(Against all defendants)**

56.     Dr. Kufel incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

57.     Dr. Kufel was Baptist Health's "employee" as defined by Title VII.

58.     Baptist Health was Dr. Kufel's "employer" as defined by Title VII.

59.     Dr. Kufel is a male, and therefore, within a protected class under 42 U.S.C. § 2000e-2.

60.     Baptist Health unlawfully subjected Dr. Kufel to and tolerated sex discrimination against Dr. Kufel's because of Dr. Kufel's sexual orientation as a gay man.

61.     OBHG unlawfully subjected and tolerated sex discrimination against Dr. Kufel because of Dr. Kufel's sexual orientation as a gay man.

62.     Despite his good performance, Baptist Health suspended Kufel and effectively terminated Dr. Kufel's employment contract.

63.     OBHG and Baptist were aware of Kufel's sexual orientation as a Gay man. Segarra called Kufel a "homo" and threatened to "have [Kufel] fired" and "have [his] contract pulled.

64.     Baptist and OBHG had no legitimate business reason for suspending and terminating Dr. Kufel, and any stated reasons would be pretext for sex discrimination.

65.     Dr. Kufel sustained damages as a result of Baptist Health's illegal discrimination in violation of Title VII including, but not limited to, suspension, lost wages, lost opportunity to increase his wages, lost bonuses, lost opportunity to increase his bonuses, damage to his career, damage to his reputation, and emotional, mental, and physical distress and anxiety.

66.     Dr. Kufel is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

## COUNT II
### FCA Retaliation
### 31 U.S.C. § 3730(h)
### (Against all Defendants)

67.     Dr. Kufel incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

68.     Section 3730(h) of the FCA prohibits Baptist Health from retaliating against employees who engage in protected conduct by taking lawful actions in furtherance of an FCA claim or by making efforts to stop one or more violations of the FCA.

69.     Dr. Kufel's protected activity was based on a reasonable and legitimate belief that Baptist engaged in fraud against the government.

70.     Baptist knew Dr. Kufel engaged in protected activity based on a reasonable and legitimate that Baptist engaged in fraud against the government.

71.     Baptist retaliated against Dr. Kufel because he engaged in protected activity under Section 3730(h) of the FCA.

72.     Baptist and OBHG's stated reasons for suspending Dr. Kufel without pay are pretextual.

73.     Dr. Kufel is entitled to such legal or equitable relief as will effectuate the purposes of the FCA, including but not limited to reinstatement, economic and compensatory damages, and reasonable costs and attorneys' fees.

**COUNT III**
**Tortious Interference**
**(Against Defendant Baptist Health)**

74.     Dr. Kufel incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

75.     A business relationship existed between Dr. Kufel and OBHG.  This is evidenced by the employment agreement between Dr. Kufel and OBHG entered into on August 9, 2017. This business relationship involved the payment of wages by OBHG to Dr. Kufel for the sole purpose of Dr. Kufel providing his services to Baptist.

76.     Baptist knew about this business relationship because Dr. Kufel was employed to provide his services to Baptist.  Dr. Kufel worked from September 2017 until Baptist tortuously interfered with Dr. Kufel's contract.

77.     Without justification, Baptist intentionally interfered with the contractual relationship between Dr. Kufel and OBHG.  Dr. Segarra stated to Dr. Kufel that he would get Dr. Kufel terminated and get Dr. Kufel's employment agreement canceled.  By request from Baptist, OBHG placed Dr. Kufel on administrative leave without pay whereby he was not allowed to work and lost wages he is entitled to under his employment agreement.

78.     Dr. Kufel has suffered damages as a result of Baptist's unlawful tortious interference.  Since Baptist removed Dr. Kufel, Dr. Kufel has not been scheduled to work the

shifts set forth in the employment agreement.  Further, Dr. Kufel has not received any wages since being removed by Baptist Health.

## PRAYER FOR RELIEF

Based on the foregoing, Dr. Kufel respectfully requests that the Court enter judgment in his favor and award to him the following relief:

a.      Economic damages;

b.      Liquidated damages;

c.      Attorney's fees and costs;

d.      Pre-judgment interest; and

e.      Any other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Dr. Kufel demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

 /s/ R. Scott Oswald
R. Scott Oswald, Esq., FBN# 158437
The Employment Law Group, PC
888 17th Street, NW, 9th Floor
Washington D.C. 20006
(202) 261-2806
soswald@employmentlawgroup.com
*Counsel for Defendant*