UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 1:20-CV-24622-MARTINEZ/BECERRA

MARK KUFEL,

       Plaintiff,

  vs.

BAPTIST HEALTH SOUTH FLORIDA,
INC., and OB HOSPITALIST GROUP, LLC,

       Defendants.

_____/

**DEFENDANT BAPTIST HEALTH SOUTH FLORIDA, INC.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**TABLE OF CITATIONS** ................................................................................................ iii

**INTRODUCTION** ........................................................................................................ 1

**ARGUMENT** ................................................................................................................ 3

    I.      STANDARD OF REVIEW. ........................................................................ 3

    II.     KUFEL'S FCA RETALIATION CLAIM FAILS AS A MATTER OF
             LAW BECAUSE KUFEL DOES NOT ALLEGE THE REQUIRED
             FACTS. ...................................................................................................... 3

          A.     Kufel's claim for retaliation under the FCA should be dismissed
                   because Kufel pleads no nexus to any false claim to the
                   government, no efforts in furtherance of an FCA action, and no
                   efforts to stop fraud on the government. ...................................... 4

               1.     Kufel fails to allege any nexus to a false claim or false
                          statement to the government. ................................................ 4

                2.     Kufel fails to allege—and cannot allege—any activity "in
                          furtherance of an action under" the FCA or "efforts to stop"
                          an FCA violation. ............................................................... 6

          B.     Kufel's claim for retaliation under the FCA should be dismissed
                   because Kufel pleads no causal connection between any protected
                     conduct and any purported adverse employment action. .......................... 10

    III.    KUFEL'S CLAIM FOR SEX DISCRIMINATION IS ALSO DEFICIENT
            AND SHOULD BE DISMISSED. ...................................................... 11

          A.     Kufel fails to plausibly plead intentional discrimination by Baptist
                   Health because he does not allege who at Baptist Health was aware
                   of his sexual orientation, who at Baptist Health took the alleged
                   adverse employment action against him, or that any individual
                   outside of his protected category received more favorable
                   treatment. ................................................................................... 11

          B.     Kufel fails to plead facts demonstrating that Baptist Health was his
                   employer under Title VII. .......................................................... 13

          C.     Kufel does not allege any facts showing that Baptist Health
                   controlled the terms and conditions of Kufel's employment such
                   that Baptist Health jointly employed Kufel with OBHG. ........................ 13

    IV.    KUFEL'S TORTIOUS INTERFERENCE CLAIM ALSO FAILS AS A
            MATTER OF LAW. ............................................................................... 14

          A.     Kufel's internally inconsistent and contradictory allegations fail to
                   place Baptist Health on notice of Kufel's claims against it. ..................... 14

          B.     Kufel's tortious interference claim should be dismissed because
                   Kufel alleges Baptist Health was not a stranger to his relationship

i

with OBHG, and Kufel does not allege Baptist Health procured a
breach of his employment contract. ......................................................... 15

    1.    Kufel cannot plead an unjustified interference, and Baptist
Health is not alleged to be a stranger to Kufel's relationship
with OBHG. .............................................................................. 16

    2.    Kufel fails to allege that Baptist Health procured a specific
breach of his contractual relationship with OBHG. ...................... 18

V.    KUFEL'S COMPLAINT IS A CLASSIC SHOTGUN PLEADING THAT
FAILS TO MEET WELL-ESTABLISHED ELEVENTH CIRCUIT
PLEADING STANDARDS ................................................................................ 18

**CONCLUSION** ........................................................................................................ 19

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................................3, 13

*Bell Atlantic Corp. v. Twombly,*
    550 US. 544 (2007)................................................................................................................3

*Bostock v. Clayton Cty., Georgia,*
    140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)..........................................................................11

*Brown v. Capital One Servs., LLC,*
    No. 18-60669-CIV, 2019 WL 569842 (S.D. Fla. Jan. 9, 2019)............................................19

*Carpenter v. UnitedHealth Grp., Inc.,*
    No. 17-60429-CIV, 2017 WL 9360866 (S.D. Fla. Nov. 7, 2017).........................................3, 9

*Coleman v. Am. Airlines,*
    19-23516-CIV-ALTONAGA, 2020 U.S. Dist. LEXIS 24564 (S.D. Fla. Feb. 11, 2020)........12

*Cooley v. Great S. Wood Preserving,*
    138 F. App'x 149 (11th Cir. 2005)......................................................................................12

*Cuevas v. Am. Exp. Travel Related Services Co., Inc.,*
    256 F. App'x 241 (11th Cir. 2007)......................................................................................12

*Davis v. Coca-Cola Bottling Co.,*
    516 F.3d 955 (11th Cir. 2008)............................................................................................15

*De-Chu Christopher Tang v. Vaxin, Inc.,*
    No. 2:13-cv-401-SLB, 2015 WL 1487063 (N.D. Ala. Mar. 31, 2015).....................................7

*Drewes v. Cetera Fin. Grp., Inc.,*
    No. 19-CV-80531-KAM, 2020 WL 1875639 (S.D. Fla. Jan. 14, 2020)................................19

*Escarra v. Regions Bank,*
    353 F. App'x 401 (11th Cir. 2009)......................................................................................12

*Evans v. Ga. Reg'l Hosp.,*
    850 F.3d 1248 (11th Cir. 2017)..........................................................................................12

*Farnsworth v. HCA, Inc.,*
    No. 8:15-CV-65-T-24-MAP, 2015 WL 3453621 (M.D. Fla. May 29, 2015)...................4, 8, 9

4813-0205-0772

*Gomez v. City of Doral*,
  20-cv-20389-JLK, 2020 U.S. Dist. LEXIS 88268 (S.D. Fla. May 18, 2020)................... 12, 13

*Gould v. Fla. Atl. Univ. Bd. of Trustees*,
  No. 10-81210-CIV, 2011 WL 13227873 (S.D. Fla. Nov. 15, 2011) ........................................ 15

*Hale v. Moreland Altobelli Assocs.*,
  No. 1:14-cv-65-WCO, 2014 WL 12235187 (N.D. Ga. Sep. 4, 2014) ................................ 9, 10

*Lyes v. City of Riviera Beach, Fla.*,
  166 F.3d 1332 (11th Cir. 1999) ........................................................................................ 14

*Mack v. Augusta–Richmond Cnty., Ga.*,
  148 F. App'x 894 (11th Cir. 2005) ...................................................................................... 4

*Menudo Int'l, LLC v. In Miami Prod., LLC*,
  No. 17-21559-CIV, 2018 WL 1138300 (S.D. Fla. Mar. 2, 2018) .................................... 16, 17

*Menudo Int'l, LLC v. In Miami Prod., LLC*,
  No. 17-21559-CIV, 2018 WL 1745395 (S.D. Fla. Apr. 11, 2018).......................................... 17

*Nimbus Techs., Inc. v. SunnData Prod., Inc.*,
  484 F.3d 1305 (11th Cir. 2007) .......................................................................................... 17

*Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*,
  13 So. 3d 1090 (Fla. 4th DCA 2009)................................................................................... 17

*Platinum Contracting, LLC v. F/V Chasing Tail*,
  No. 18-10130-CIV, 2018 WL 6070529 (S.D. Fla. Nov. 20, 2018) ........................................ 19

*Randall v. Scott*,
  610 F.3d 701 (11th Cir. 2010) .............................................................................................. 9

*Reeves v. DSI Sec. Servs.*,
  331 F. App'x 659 (11th Cir. 2009) ...................................................................................... 13

*Reynolds v. Winn-Dixie Raleigh Inc.*,
  620 F. App'x 785 (11th Cir. 2015) .................................................................................. 10, 11

*Roundtree v. Tegna, Inc.*,
  8:19-CV-2857-T-36SPF, 2020 WL 4582741 (M.D. Fla. Aug. 10, 2020) .............................. 14

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
  742 So. 2d 381 (Fla. 4th DCA 1999)................................................................................... 16

*Smith v. City of Fort Pierce*,
  No. 2:18-CV-14147, 2018 WL 5787269 (S.D. Fla. Nov. 5, 2018) ........................................ 15

iv

*Sourcing Solutions USA, Inc. v. Kronos America, LLC, TKS, S.A.*,
   Case No. 10-cv-23476, 2011 WL 13223514 (S.D. Fla. Jan. 26, 2011) ................................... 18

*Strong v. KIMC Investments, Inc.*,
   No. 09-cv-81616, 2011 WL 13173591 (S.D. Fla. Feb. 9, 2011),
   *aff'd*, 472 F. App'x 886 (11th Cir. 2012).................................................................. 4, 7, 8, 9, 11

*Swierkiewicz v. Sorema N. A.*,
   534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).............................................................. 12

*Thomson v. Officer Jerry Davenport*,
   2010 WL 11601554 (S.D. Fla. June 16, 2010) ........................................................................ 15

*Treco Int'l S.A. v. Kromka*,
   706 F. Supp. 2d 1283 (S.D. Fla. 2010) ...................................................................... 16, 17, 18

*U.S. ex rel. Chase v. HPC Healthcare, Inc.*,
   723 F. App'x 783 (11th Cir. 2018) ........................................................................... 3, 5, 8, 10

*U.S. ex rel. Fernandez v. Miami Cancer Inst.*,
   No. 17-24051-CIV, 2019 WL 1993513 (S.D. Fla. May 6, 2019) *appeal dismissed*,
   No. 19-12153-DD, 2019 WL 6487517 (11th Cir. Sept. 6, 2019) .......................... 1, 4, 5, 6, 7, 9

*U.S. ex rel. Oemar v. Glades Drugs, Inc.*,
   No. 15-81633, 2017 WL 6033550 (S.D. Fla. Oct. 26, 2017) ................................................. 5, 8

*U.S. ex rel. Petri v. Sarasota Emergency Assocs. P.A.*,
   No. 8:11-CV-00492T27MAP, 2013 WL 12387658 (M.D. Fla. Feb. 7, 2013)........................... 5

*U.S. ex rel. Sanchez v. Lymphatx, Inc.*,
   596 F.3d 1300 (11th Cir. 2010); *aff'd*, 472 F. App'x 886 (11th Cir. 2012) .............................. 7

*U.S. ex rel. Westlund v. Lab. Corp. of Am. Holdings*,
   No. 8:10-CV-2882-T-23, 2012 WL 1416417 (M.D. Fla. Apr. 24, 2012)........................... 5, 7, 8

*U.S. v. AseraCare, Inc.*,
   938 F.3d 1278 (11th Cir. 2019) ................................................................................................ 6

*U.S. v. Planned Parenthood of Heartland, Inc.*,
   No. 411CV00129JAJCFB, 2016 WL 7474797 (S.D. Iowa June 21, 2016) .............................. 6

*Universal Health Servs., Inc. v. United States*,
   136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) .............................................................................. 6

*Virgo v. Riviera Beach Assocs., Ltd.*,
   30 F.3d 1350 (11th Cir. 1994) ......................................................................................... 13, 14

v

*Weiland v. Palm Beach Cty. Sheriff's Office,*
  792 F. 3d 1313 (11th Cir. 2015) ............................................................. 19

**Statutes**

31 U.S.C. § 3730(h)(1) ............................................................. 4, 8, 11

42 U.S.C. § 2000e-2 ............................................................. 11, 13

**Rules**

Fed. R. Civ. P. 8 ............................................................. 1, 19

Fed. R. Civ. P. 10 ............................................................. 19

Fed. R. Civ. P. 12(b)(6) ............................................................. 1

4813-0205-0772

Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Baptist Health South Florida, Inc. ("Baptist Health") moves to dismiss the Complaint of Plaintiff Dr. Mark Kufel ("Kufel" or "Plaintiff") (ECF No. 1).

## INTRODUCTION

Kufel's vague, contradictory, and deficient allegations do not add up to any viable claim against Baptist Health for False Claims Act ("FCA") retaliation, Title VII sex discrimination, or tortious interference. First, Kufel's claim for FCA retaliation fails because he alleges no facts showing how Baptist Health purportedly violated the FCA, no facts establishing that Baptist Health submitted a false claim for payment to Medicare or any other government payor, and no facts that Baptist Health made a statement to the government that was material to a false or fraudulent claim. Moreover, Kufel undercuts his already implausible claim for FCA retaliation. He first asserts that he "believed" that patient admitting decisions he disagreed with "constituted Medicare or Medicaid fraud." (Compl. ¶ 53.) Then he alleges that his "main duties" were "monitoring and treating expectant mothers during pregnancy, childbirth, and postpartum" (*id.* ¶ 17)—in other words, monitoring and treating women younger than 65 who almost certainly were not even eligible for Medicare. But Kufel does not plead that any patient at issue was a Medicare or Medicaid patient. Even if Kufel somehow "believed" there was Medicare or Medicaid fraud, he does not allege that he actually "***told*** his supervisors that their actions constituted fraud ***on the government*** or that they might be sued in a qui tam action." *U.S. ex rel. Fernandez v. Miami Cancer Inst.*, No. 17-24051-CIV, 2019 WL 1993513, at *5 (S.D. Fla. May 6, 2019) (dismissing FCA retaliation claim without leave to amend) (emphasis supplied). Kufel also fails to plead any link between a false statement or claim by Baptist Health and the government's decision to pay any such false claim. Furthermore, Kufel does not allege facts connecting any protected activity under the False Claims Act to an adverse employment action by Baptist Health against him.

Likewise, Kufel's Title VII sex discrimination claim must be dismissed because Kufel: (1) does not plead facts establishing Baptist Health was his employer, either singularly or jointly with OB Hospitalist Group, LLC ("OBHG"); and (2) fails to plausibly plead intentional discrimination

against him by anyone at Baptist Health. Kufel alleges in conclusory terms that Baptist Health was his "'employer' as defined by Title VII" (*id.* ¶ 58), but at the same time he alleges that his employment contract was with OBHG. Kufel does not allege any facts to show that Baptist Health and OBHG jointly employed him for purposes of his Title VII sex discrimination claim, including facts demonstrating what if any control Baptist Health exercised over the terms and conditions of his employment with OBHG. Kufel also does not plead who at Baptist Health was aware of his sexual orientation, who at Baptist Health made the purported adverse employment decision against him, or that any individual not in his protected category received more favorable treatment than he did.

Kufel's tortious interference claim also fails as a matter of law. Kufel asserts that Baptist Health tortiously interfered with his employment contract or business relationship with OBHG, but Kufel does not plausibly allege that Baptist Health was a stranger to that employment contract or business relationship, as required. Instead, Kufel alleges facts demonstrating that his relationship with OBHG arose out of a contract between OBHG and Baptist Health. Necessarily, then, Baptist Health was not a stranger to Kufel's relationship with OBHG for purposes of any variety of tortious interference claim. Moreover, Kufel fails to plausibly allege how Baptist Health's purported conduct procured OBHG's breach or nonperformance of its employment agreement with Kufel.

Kufel's Title VII and tortious interference claims against Baptist Health also should be dismissed because Kufel's allegations in support of those claims are so contradictory and internally inconsistent as to deprive Baptist Health of fair notice of what Kufel's claims against it are, and on what grounds he bases those claims. For example, Kufel simultaneously alleges that Baptist Health was his employer for purposes of his Title VII claim, but also that Baptist Health tortiously interfered with his employment with OBHG. Baptist Health cannot simultaneously be Kufel's employer and a stranger to his employment relationship with OBHG so as to tortiously interfere with that relationship. Although Kufel may plead claims in the alternative, he cannot plead inconsistent facts in support of alternative claims.

4813-0205-0772

Finally, Kufel's Complaint should be dismissed because it is an impermissible shotgun pleading that fails to meet well-established Eleventh Circuit pleading standards. Specifically, each count of Kufel's Complaint impermissibly incorporates all of the preceding allegations, including all preceding counts. Kufel's Complaint is also replete with conclusory, vague, and immaterial allegations that are not obviously connected with any particular cause of action. For all of these reasons, the Court should dismiss the Complaint as asserted against Baptist Health.

## ARGUMENT

### I.   STANDARD OF REVIEW.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads ***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*[1] "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements . . . will not do." *Bell Atlantic Corp. v. Twombly*, 550 US. 544, 555 (2007). Although Rule 12(b)(6) requires the Court to accept factual allegations as true for purposes of a motion to dismiss, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Carpenter v. UnitedHealth Grp., Inc.*, No. 17-60429-CIV, 2017 WL 9360866, at *2 (S.D. Fla. Nov. 7, 2017).

### II.   KUFEL'S FCA RETALIATION CLAIM FAILS AS A MATTER OF LAW BECAUSE KUFEL DOES NOT ALLEGE THE REQUIRED FACTS.

"In order to show retaliation under the False Claims Act, the plaintiff must show that []he was discriminated against in the terms and conditions of [his] employment for engaging in protected activity." *U.S. ex rel. Chase v. HPC Healthcare, Inc.,* 723 F. App'x 783, 791 (11th Cir. 2018). The FCA defines "protected activity" as "lawful acts done by the employee . . . in

---

[1] Except as otherwise noted, all emphasis in this brief is supplied. Also, in citations to cases, internal citations and quotations are omitted except as otherwise noted.

4813-0205-0772

furtherance of an action under the False Claims Act or other efforts to stop 1 or more violations of the False Claims Act." *Id.* To state a claim of retaliation the plaintiff must establish "a causal connection between the retaliation and the protected activity; that is, [he] must show that the retaliation was because of the protected activity." *Id.* at 792; *see also* 31 U.S.C. § 3730(h)(1). The entity against which the plaintiff alleges an FCA retaliation claim must actually know of the purported protected conduct, i.e., express statements to the entity asserting fraud on the government or that a qui tam action may be filed, in order for retaliation to occur. *Farnsworth v. HCA, Inc.*, No. 8:15-CV-65-T-24-MAP, 2015 WL 3453621, at *2 (M.D. Fla. May 29, 2015) ("In order to state an FCA retaliation claim, a plaintiff must allege three elements: (1) she was acting in furtherance of a FCA enforcement action or other efforts to stop violations of the FCA, *i.e.,* engaging in protected conduct, (2) the employer[2] knew that the employee was engaged in the protected conduct, and (3) the employer was motivated to take an adverse employment action against the employee because of the protected conduct." (citing *Mack v. Augusta–Richmond Cnty., Ga.,* 148 F. App'x 894, 896–97 (11th Cir. 2005))); *Fernandez*, 2019 WL 1993513, at *5.

A. **Kufel's claim for FCA retaliation should be dismissed because Kufel pleads no nexus to any false claim to the government, no efforts in furtherance of an FCA action, and no efforts to stop fraud on the government.**

1. **Kufel fails to allege any nexus to a false claim or false statement to the government.**

Kufel cannot allege any protected activity without alleging how Baptist Health purportedly violated the FCA. *Strong v. KIMC Investments, Inc.,* No. 09-cv-81616, 2011 WL 13173591, at *2 (S.D. Fla. Feb. 9, 2011) ("Because the . . . Complaint does not properly allege how [defendant] was violating the False Claims Act, it also does not properly allege any 'other efforts' [relator] undertook to stop False Claims Act violations."), *aff'd*, 472 F. App'x 886 (11th Cir. 2012). In other

---

[2] Baptist Health denies that it was Kufel's employer, and its use of that term or the term "employee" does not waive that argument. The "employer" and "employee" terms are used because cases analyzing FCA retaliation claims tend to use those terms, both before and after the 2009 amendment to section 3730(h)(1) added contractor and agent relationships.

words, an employee or contractor raising concerns is "not protected activity" if it "is not related to a False Claims Act violation." *HPC Healthcare,* 723 F. App'x at 792 (affirming dismissal of FCA retaliation claim). When a complaint "does not specifically identify either an alleged false claim actually presented to the government or a statement material to a false or fraudulent claim as required to establish the plausibility of [plaintiff's] retaliation claim," it "fails to state a claim for retaliatory discharge." *U.S. ex rel. Petri v. Sarasota Emergency Assocs. P.A.*, No. 8:11-CV-00492T27MAP, 2013 WL 12387658, at *4 n.5 (M.D. Fla. Feb. 7, 2013) (dismissing FCA retaliation claim); *U.S. ex rel. Westlund v. Lab. Corp. of Am. Holdings,* No. 8:10-CV-2882-T-23, 2012 WL 1416417, at *3 (M.D. Fla. Apr. 24, 2012) (dismissing retaliation claim because it lacked a link to an FCA violation); *Fernandez,* 2019 WL 1993513, at *5, *appeal dismissed,* No. 19-12153-DD, 2019 WL 6487517 (11th Cir. Sept. 6, 2019); *U.S. ex rel. Oemar v. Glades Drugs, Inc.,* No. 15-81633, 2017 WL 6033550, at *4 (S.D. Fla. Oct. 26, 2017).

In *Westlund,* for example, the defendant allegedly falsely promised patients that a private insurer would pay for a test. 2012 WL 1416417, at *1. The court dismissed the FCA retaliation claim for "basic failures," including that the plaintiff "never cite[d] which subsection of Section 3729 [the defendant] supposedly violated" and "never establishe[d] the direct link between a false statement and the Government's decision to pay or approve a false claim." *Id.* at *3.

Like the plaintiff in *Westlund,* Kufel does not identify which subsection of § 3729 he believes Baptist Health violated, or any facts to plead any such violation. Also like the plaintiff in *Westlund,* Kufel has not established any link between a false statement or claim and the government's decision to pay or approve a false claim. In fact, Kufel has not alleged any facts at all regarding false claims to the government, billing or presentment to the government of any false claims, or government payment of any false claims. As in *Westlund* and the other cases cited above, Kufel's FCA retaliation claim should be dismissed because Kufel does not plead any nexus to a material false claim actually submitted to the government.

Furthermore, Kufel's generalized allegations regarding patient safety and reports of purportedly inappropriate conduct are insufficient to implicate a violation of the FCA. Pleading

issues that purportedly "put patients at serious risk . . . is insufficient to plead a retaliation claim under the FCA." *Fernandez*, No. 17-24051-CIV, 2019 WL 1993513, at *5; *see also U.S. v. Planned Parenthood of Heartland, Inc.*, No. 411CV00129JAJCFB, 2016 WL 7474797, at *17 (S.D. Iowa June 21, 2016) ("The FCA is not the appropriate avenue of redress when a plaintiff merely disagrees with the course of medical treatment administered by a defendant.") (citing *Universal Health Servs., Inc. v. U.S.*, 136 S. Ct. 1989, 2004; 195 L. Ed. 2d 348 (2016)). Kufel does not allege an objectively false statement of fact regarding disagreement over patient-care decisions at all, much less to the government. *See U.S. v. AseraCare, Inc.*, 938 F.3d 1278, 1296–97 (11th Cir. 2019) ("[A] claim . . . based on the physician's or medical director's clinical judgment . . . cannot be 'false'—and thus cannot trigger FCA liability—if the underlying clinical judgment does not reflect an objective falsehood."). Kufel has not alleged any facts to show that his alleged concerns or disagreements regarding patient care had anything to do with the submission of false or fraudulent statements to the government or claims for payment from the government.

Kufel further fails to plead facts showing that any of his "quality-of-care" allegations were material to the government's decision to pay any claim. Kufel's vague references to "Medicare or Medicaid fraud" (*id.* ¶¶ 39, 53) do not come close to pleading that the conduct alleged could be material to the government's decision to pay. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1996, 2002 (2016) ("A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."). Kufel's allegations do not plead FCA violations and fail to establish the required nexus to a material false claim or statement to the government.

> **2. Kufel fails to allege—and cannot allege—any activity "in furtherance of an action under" the FCA or "efforts to stop" an FCA violation.**

Kufel does not allege any act "in furtherance of an action under the FCA." To do so, Kufel "must allege having put the employer on notice of a 'distinct possibility' of False Claims Act

4813-0205-0772

litigation." *Strong*, 2011 WL 13173591, at *2 (quoting *U.S. ex rel. Sanchez v. Lymphatx, Inc.,* 596 F.3d 1300, 1304 (11th Cir. 2010)). To meet the "notice of a distinct possibility" standard, the individual's actions as alleged must "support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a qui tam action by the employee." *Id.* at *2. When a plaintiff "does not allege sufficient facts to show how [his actions] would have put [the defendant] on notice that there was a 'distinct possibility' that they would be sued, … [i]t would be unreasonable to conclude that [the defendant] feared they would be 'reported to the government for fraud or sued in a qui tam action by the employee.'" *De-Chu Christopher Tang v. Vaxin, Inc.,* No. 2:13-cv-401-SLB, 2015 WL 1487063, at *4 (N.D. Ala. Mar. 31, 2015). Here, Kufel does not plead sufficient facts to support a reasonable conclusion that he said anything to Baptist Health to cause it to fear that it would be "reported to the government for fraud or sued in a qui tam action," *see id.,* both because Kufel fails to plead a FCA violation, as set forth in Section II.A.1., and because Kufel's conclusory allegations are insufficient.

Kufel alleges that certain Baptist Health "practices and procedures became evident" to him (Compl. ¶ 21) and that he "learned about Baptists' [sic] improper and inconsistent admitting practices" (*id.* ¶ 27). He alleges that he "objected to admitting [a] patient because it was medically unnecessary" (*id.* ¶ 29), "complained about [a doctor's] inappropriate behavior" (*id.* ¶ 35), and "objected to the ER's routine practice of admitting patients without proper medical diagnoses because [doing so] would lead to Medicare or Medicaid fraud." (*Id.* ¶ 39.)

Missing from this litany of complaints are any factual allegations showing Kufel actually put Baptist Health "on notice of a 'distinct possibility' of False Claims Act litigation." *Strong*, 2011 WL 13173591, at *2. Kufel pleads no facts regarding to whom, when, or how he complained, and no facts contending that Kufel ever "told his supervisors that their actions constituted fraud on the government or that they might be sued in a qui tam action." *Fernandez*, 2019 WL 1993513, at *5. As a result, Kufel has not pleaded sufficient facts to allege protected conduct "in furtherance of" an FCA action. *Id.*; *Westlund*, 2012 WL 1416417, at *2 (dismissing FCA retaliation claim asserting that the plaintiff "questioned" and "raised concerns," rather than complaining of fraud

"against the government" or reporting "the possibility of a qui tam action").

Nor does Kufel allege any "efforts to stop 1 or more violations of the False Claims Act." He fails to plead protected conduct under this prong of § 3730(h)(1) for three reasons: (1) he fails to plead a substantive violation of the FCA; (2) he fails to plead that he made efforts to stop the purported conduct; and, (3) he fails to plead reporting that would qualify as protected conduct in an effort to stop the purported conduct.

First, to plead protected conduct "in [an] effort to stop one or more violations of the FCA," a plaintiff must plead substantive violations of the FCA. *HPC Healthcare,* 723 F. App'x at 792 (an employee raising concerns is "not protected activity" if it "is not related to a False Claims Act violation"); *Oemar*, 2017 WL 6033550, at *4 ("[W]ithout well-pleaded facts connecting [the alleged conduct] to Defendant's submission of a fraudulent claim to the government, the Court cannot plausibly infer that [plaintiff] attempted to prevent a violation of the FCA"); *Farnsworth*, 2015 WL 3453621, at *7 ("an employee's [internal] reports must be related to an FCA violation to constitute protected conduct"); *Strong*, 2010 WL 11505221, at *3 ("Because the Complaint does not properly allege how [defendant] was violating the False Claims Act, it also does not properly allege any 'other efforts' [plaintiff] undertook to stop False Claims Act violations."). As discussed, *supra*, in Section II.A.1., Kufel does not plead an FCA violation, and therefore Kufel cannot plead that he engaged in efforts to stop one or more FCA violations.

Next, Kufel fails to plead facts showing that he made efforts to stop a purported violation of the FCA. In *Farnsworth*, the court granted defendants' motion to dismiss an FCA retaliation claim because the plaintiff "d[id] not specifically assert that she took part in any action that opposed a false claim to Medicare and Medicaid," other than in conclusory terms. 2015 WL 3453621, at *7. The plaintiff in *Farnsworth* alleged that she internally complained about conduct, but "the complaint does not allege that the conduct or practice resulted in the submission of a false claim to the government." *Id.*

Kufel alleges that he objected to an alleged "routine practice of admitting patients without proper medical diagnoses" and that the basis for his objection was allegedly "because" such a

practice "would lead to Medicare or Medicaid fraud" (Compl. ¶ 39) and that he "believed" that patient admitting decisions he disagreed with "constituted Medicare or Medicaid fraud" (*id.* ¶ 53), but Kufel does not allege that he actually "told" anyone at Baptist that Baptist was engaging in Medicare or Medicaid fraud. *Fernandez*, 2019 WL 1993513, at *5. Moreover, even if Kufel had pleaded a false claim or false statement to the government, which he does not, Kufel fails to plead that he engaged in any action or conduct to express opposition to the purported practice, beyond a one-time "refus[al] to sign off on a patient's admission to the ER[.]" (*Id.*) Kufel's alleged refusal does not even reach the level of an "internal report," which was insufficient to state an FCA retaliation claim in *Farnsworth*. 2015 WL 3453621, at *7. Kufel's allegation that he made "protected disclosures about improper admitting practices" is conclusory and unsupported by the allegation of any facts. (*Id.* ¶ 53.) Nowhere in the Complaint does Kufel say what "protected disclosures" he made, to whom, when, or about what medical claims or patients—he merely uses the phrase as a conclusion with no supporting facts. Such conclusory assertions do not meet the requisite plausibility standard. *Carpenter*, 2017 WL 9360866, at *2 ("'[C]onclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations.'") (quoting *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010)).

Even if Kufel had adequately alleged internal reporting of fraud, internal reporting only qualifies as "efforts to stop" an FCA violation if the plaintiff reports to a supervisor or a company compliance department concerns about fraudulent billing "to the government." *Hale v. Moreland Altobelli Assocs.*, No. 1:14-cv-65-WCO, 2014 WL 12235187, at *7 (N.D. Ga. Sep. 4, 2014); *see also Strong*, 2011 WL 13173591, at *3 (dismissing plaintiff's retaliation claim because "there is no allegation of [plaintiff] complaining to [defendant] of making fraudulent claims to the government"); *Fernandez*, 2019 WL 1993513, at *5 ("Mere reporting of wrongdoing to supervisors, without alleging that the wrongdoing constitute[s] ***fraud on the government***, does not qualify as protected conduct") (emphasis in original).

In *Hale*, the court rejected the plaintiff's allegations of internal reporting where plaintiff "d[id] not state whom he told … other than to note that he complained." *Hale*, 2014 WL 12235187,

at *6.  The court noted that the plaintiff "d[id] not indicate he made any complaints in his chain of command," and for the complaints he did make to a supervisor, the plaintiff did not state that he informed the supervisor that he believed this issue to be one of fraud on the government. *Id.* The court ruled that the plaintiff "must allege that he made these complaints to his supervisors on the basis of fraud against the United States Government," and, since he failed to allege this, the court dismissed the plaintiff's retaliation claim because he "has not alleged he engaged in any protected activity under the [FCA]." *Id.* at *7. As *Hale* and the cases above state, internal reporting must be to a supervisor and must specify the employee's concern about fraud on the government in order to qualify as protected conduct for purposes of an FCA retaliation claim.

Here, Kufel has made no such allegations. The only complaints that Kufel alleges he escalated through an official internal report were his complaints about another doctor's "inappropriate behavior." (Compl. ¶¶ 34–35.) These allegations do not qualify as "efforts to stop" one or more FCA violations not only because Kufel does not allege an FCA violation, but also because Kufel does not allege, and cannot allege, that this incident involved the submission of a fraudulent claim or false statement to the government. Because Kufel does not plead protected conduct under the FCA, Count II of the Complaint should be dismissed.

**B. Kufel's claim for FCA retaliation should be dismissed because Kufel pleads no causal connection between any protected conduct and any purported adverse employment action.**

Even if Kufel had pleaded that he engaged in a protected activity, Kufel fails to allege a causal connection between the alleged protected activity and the alleged retaliation, as he must to state an FCA retaliation claim. *See HPC Healthcare*, 723 F. App'x at 792; *Reynolds v. Winn-Dixie Raleigh Inc.*, 620 F. App'x 785, 791 (11th Cir. 2015) ("In other words, protection under this provision requires a showing that the plaintiff was engaged in protected conduct and that the employer retaliated against him 'because of' that protected conduct.").

Kufel alleges only that Baptist Health retaliated against him "for making protected disclosures about improper admitting practices which [he] believed constituted Medicare or Medicaid fraud." (Compl. ¶ 53.) Kufel's subjective belief that "admitting practices," at Baptist

10

Hospital "would," according to Kufel, "lead to Medicare or Medicaid fraud" (*id.* ¶ 39), is not the standard in an FCA retaliation case. Instead, the standard in this Circuit is that Kufel must plead factual content to support a reasonable conclusion that ***Baptist Health*** feared being reported to the government or sued in an FCA action. *Strong*, 2011 WL 13173591, at *2; *Reynolds*, 620 F. App'x at 792 ("To establish the necessary causal connection under § 3730(h)(1), the plaintiff must show that the employer was at least aware of the protected activity."). Moreover, Kufel does not plead a factual basis for his use of the term "protected disclosure." Instead, Kufel pleads only that he "objected" to purportedly "improper admitting practices" (Compl. ¶¶ 39, 53), but he never alleges to whom he made these objections, or when. Thus, Kufel's allegations regarding this required element fail to plead that Baptist Health was aware that Kufel engaged in allegedly protected conduct. As a result, Kufel does not allege the necessary causal connection between his alleged protected activity under the FCA and any alleged retaliation against him on Baptist Health's part for engaging in such activity.  Kufel's FCA retaliation claim therefore should be dismissed.

### III.   KUFEL'S CLAIM FOR SEX DISCRIMINATION IS DEFICIENT AND SHOULD BE DISMISSED.

**A. Kufel fails to plausibly plead intentional discrimination by Baptist Health because he does not allege who at Baptist Health was aware of his sexual orientation, who at Baptist Health took the alleged adverse employment action against him, or that any individual outside of his protected category received more favorable treatment.[3]**

Kufel brings a claim against Baptist Health and OBHG for violation of Title VII, 42 U.S.C. § 2000e-2, complaining that he was "subjected . . . to . . . sex discrimination" and "effectively terminated" due to his sexual orientation as a gay man. (Compl. ¶¶ 60, 62.) Title VII prohibits employers from discrimination based on sex. 42 U.S.C. § 2000e-2(a)(1); *see also Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020). To state a *prima facie* case for sex discrimination under Title VII, a plaintiff must establish: "(1) []he is a member of a protected class; (2) []he was subjected to adverse employment action; (3) [his] employer treated

---

[3] As discussed below, Kufel's Complaint should also be dismissed because Kufel's allegations and claims are so contradictory and internally inconsistent as to fail to provide Baptist Health with notice of the claims Kufel asserts against it.  *See infra*, Section III.A.

similarly situated employees [not belonging to the class] more favorably; and (4) []he was qualified to do the job." *See, e.g.*, *Cuevas v. Am. Exp. Travel Related Services Co., Inc.*, 256 F. App'x 241, 243 (11th Cir. 2007); *see also Escarra v. Regions Bank*, 353 F. App'x 401, 404 (11th Cir. 2009) ("A *prima facie* case . . . is established when the plaintiff demonstrates he was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.").

Although the *prima facie* framework is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), the Eleventh Circuit has "concluded that the Supreme Court in *Swierkiewicz* did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 152 (11th Cir. 2005). A would-be Title VII plaintiff must "provide enough factual matter to plausibly suggest intentional discrimination." *Gomez v. City of Doral*, 20-cv-20389-JLK, 2020 U.S. Dist. LEXIS 88268 at *4-5 (S.D. Fla. May 18, 2020) (citing *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017)).

Here, Kufel fails to allege even basic facts to support a claim for sex discrimination. Kufel does not allege who at Baptist Health knew of his sexual orientation, if anyone. He does not allege who at Baptist Health made the purported adverse employment decision—whether it was the same doctor who Kufel accuses of using a pejorative term or someone else. Kufel also does not allege the existence of any individual not in his protected category that received more favorable treatment than he received. Kufel does not even allege conduct on the part of Baptist Health that was more favorable to other contracted doctors. *See Gomez*, 20-cv-20389-JLK, 2020 U.S. Dist. LEXIS 88268 at *5 (dismissing Title VII sex discrimination claim where female plaintiff "fail[ed] to allege any facts showing that similarly-situated male employees were treated more favorably"); *see also Coleman v. Am. Airlines*, 19-23516-CIV-ALTONAGA, 2020 U.S. Dist. LEXIS 24564 at *17 (S.D. Fla. Feb. 11, 2020) ("To permit an inference of discrimination, a 'plaintiff must identify a comparator outside of his protected class who was '*similarly situated in all material respects*,'

12

yet was treated more favorably under the same circumstances."). Simply alleging that he was "subjected to" discrimination is not legally sufficient to plead a Title VII claim.

**B. Kufel fails to plead facts demonstrating that Baptist Health was his employer under Title VII.**

Kufel must plead sufficient facts to establish an employment relationship with Baptist Health in order to maintain a claim for sex discrimination under Title VII. *Reeves v. DSI Sec. Servs.*, 331 F. App'x 659, 661 (11th Cir. 2009); *see also* 42 U.S.C. § 2000e–2. Kufel makes only the conclusory assertion that Baptist Health "was Dr. Kufel's 'employer' as defined by Title VII." (*Id.* ¶ 58.) This Court should disregard this mere formulaic recital of the elements of Kufel's claim. *Ashcroft*, 556 U.S. at 677–78. Simply alleging that Baptist Health was an "employer," without any factual content to support the allegation, is insufficient to survive a motion to dismiss.

To the contrary, Kufel alleges that his employment contract, and thus employment relationship, is with OBHG. (Compl. ¶ 13.) More specifically, OBHG allegedly contracted with Kufel "to provide services *at* Baptist, a ***third-party*** hospital facility." (*Id.*) According to Kufel, OBHG enters into similar contracts with "various" other hospitals, not just Baptist Health. (*Id.* ¶ 14.) Kufel further asserts that Baptist Health's contractual relationship is directly with OBHG. (*Id.*) Kufel's allegations also generally portray "Baptist" as a location, not an employer. (*Id.* ¶¶ 7, 15, 20, 49.) None of these allegations support that Baptist Health was Kufel's employer for purposes of his Title VII claim. Therefore, Count I should be dismissed against Baptist Health.

**C. Kufel does not allege any facts showing that Baptist Health controlled the terms and conditions of Kufel's employment such that Baptist Health jointly employed Kufel with OBHG.**

Having failed to allege any factual content establishing Baptist Health as his employer, Kufel brings his Title VII claim against both OBHG and Baptist Health—without any attempt to allege facts pleading a joint employer relationship. The joint employer concept "recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359–61 (11th Cir. 1994). This kind of a relationship potentially arises when

"two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees." *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999) (citing *Virgo*, 30 F.3d at 1359–60).

Here, Kufel does not allege any facts suggesting a joint employer relationship between Baptist Health and OBHG. Kufel clearly alleges that his employment contract is with OBHG, and he alleges no information explaining how his contract with OBHG does not form the only employment relationship at issue in his Complaint. Kufel also fails to allege what control Baptist Health exercised over his employment with OBHG. For example, the Complaint is devoid of information regarding who from Baptist allegedly supervised Kufel's performance, who employed the other doctors Kufel references in his allegations, who paid Kufel's salary, and in what ways Baptist Health otherwise shared or co-determined matters governing the essential terms and conditions of his alleged employment with OBHG. Without pleading any such facts, Kufel cannot plausibly plead a Title VII claim against Baptist Health as his joint employer with OBHG. *See, e.g.*, *Roundtree v. Tegna, Inc.*, 8:19-CV-2857-T-36SPF, 2020 WL 4582741, at *3 (M.D. Fla. Aug. 10, 2020) (granting motion to dismiss where plaintiff alleged "no facts for the Court to consider as it related to a joint employer relationship between" the defendants).

## IV. KUFEL'S TORTIOUS INTERFERENCE CLAIM FAILS AS A MATTER OF LAW.

### A. Kufel's internally inconsistent and contradictory allegations fail to place Baptist Health on notice of Kufel's claims against it.

Kufel simultaneously claims that OBHG suspended his employment contract without pay, that Baptist Health and OBHG together suspended his employment contract, and finally, that Baptist Health alone suspended his employment contract with OBHG. (Compl. ¶¶ 50, 52, 62.) Kufel also simultaneously claims his employment contract is with OBHG, that Baptist Health is his employer, and that both OBHG and Baptist Health employed him. (*Id.* ¶¶ 7, 13, 58.) Kufel attempts to plead inconsistent facts from both sides of the same coin—that Baptist Health is Kufel's employer for purposes of his Title VII claim, but also that Baptist Health interfered in Kufel's contractual relationship with OBHG. (*Id.* ¶¶ 54, 58, 77.)

Kufel's allegations in support of his Title VII claim and tortious interference claims are so internally inconsistent and contradictory as to deprive Baptist Health of "fair notice of what [Kufel's] claim[s are] and the grounds upon which [they] rest[]," as required by Rule 8. *See Gould v. Fla. Atl. Univ. Bd. of Trustees*, No. 10-81210-CIV, 2011 WL 13227873, at *1 (S.D. Fla. Nov. 15, 2011) (quoting *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008)).  The Court should disregard these inconsistent and contradictory allegations. *Smith v. City of Fort Pierce*, No. 2:18-CV-14147, 2018 WL 5787269, at *7 (S.D. Fla. Nov. 5, 2018) (dismissing a claim with internally inconsistent factual allegations and finding that "it was inappropriate [for plaintiff] to include inconsistent factual allegations within a claim"); *Thomson v. Officer Jerry Davenport*, 2010 WL 11601554, at *5 n. 9 (S.D. Fla. June 16, 2010) ("While Plaintiff may plead ***claims*** in the alternative, she cannot salvage her battery claim by requesting that certain ***facts*** alleged in her Amended Complaint be ignored for purposes of certain claims.") (emphasis in original).

**B.  Kufel's tortious interference claim should be dismissed because Kufel alleges Baptist Health was not a stranger to his relationship with OBHG, and Kufel does not allege Baptist Health procured a breach of his employment contract.**

In Count III of the Complaint, Kufel does not specify whether he is alleging tortious interference with a contract or with a business relationship. The Complaint alleges contractual relationships between Kufel and OBHG, and between OBHG and Baptist Health. Kufel alleges he "signed an employment agreement with OBHG to provide services at Baptist, a third-party hospital facility." (Compl. ¶ 13.) Kufel further recognizes that "OBHG contracts with various hospital systems, such as Baptist [Health], to provide hospitals with OB/GYN physicians." (*Id.* ¶ 14.) Count III also appears to suggest a claim for tortious interference with a business relationship against Baptist Health. In the vaguely pleaded tortious interference count Kufel uses the terms "business relationship" and "employment agreement," presumably to refer to the same signed, written contract Kufel entered into with OBHG. (Compl. ¶¶ 75–78, 13.) Regardless, Kufel fails to state a claim for either tortious interference with a contractual relationship or for tortious interference with a business relationship.

4813-0205-0772

Under Florida law, "'[a] claim for interference with a contractual relationship requires: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach.'" *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010). A claim for tortious interference with a business relationship requires: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference.'" *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2018 WL 1138300, at *3 (S.D. Fla. Mar. 2, 2018) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999)).

For both claims to properly allege the element of unjustified interference, the defendant ***must be a stranger*** to the contract or business relationship. *Menudo*, 2018 WL 1138300, at *3. Furthermore, as to the claim for tortious interference with a contractual relationship, a plaintiff must plead an actual, specific, and successful breach of the contract or contractual relationship. *Kromka*, 706 F. Supp. 2d at 1288 (dismissing tortious interference with a contractual relationship claim for failure to plead the element of a contractual breach actually procured). Because Kufel fails to properly allege: (1) that Baptist Health unjustifiably interfered with his contractual or business relationship with OBHG, and (2) that Baptist Health procured a breach of Kufel's employment contract with OBHG, Kufel's Count III for tortious interference should be dismissed.

**1. Kufel cannot plead an unjustified interference, and Baptist Health is not alleged to be a stranger to Kufel's relationship with OBHG.**

First, Kufel fails to allege that Baptist Health's purported "interference" with Kufel's contract with OBHG was unjustified, aside from a sole conclusory allegation in paragraph 77 stating "[w]ithout justification . . . ." *See Menudo Int'l*, 2018 WL 1138300, at *3 (dismissing the tortious interference claim where the complaint contained only one conclusory allegation that the

16

defendants' actions were "unjustified"). No other allegation gives rise to a plausible inference of a lack of justification.

Kufel's claim also fails on the face of the Complaint because Kufel's allegations indicate that Baptist Health is not a stranger to Kufel's employment contract with OBHG. "A defendant is not a stranger to a business or contractual relationship if the defendant 'has any beneficial or economic interest in, or control over, that relationship.'" *Nimbus Techs., Inc. v. SunnData Prod., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007); *see also Kromka*, 706 F. Supp. 2d at 1289 (same); *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2018 WL 1745395, at *3 (S.D. Fla. Apr. 11, 2018) ("One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract."). "These allegations are essential because 'the contractual interests that tortious interference is intended to protect *include* the interests of the third-party with respect to the contract.'" *Menudo Int'l*, 2018 WL 1745395, at *3 (quoting *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1095 (Fla. 4th DCA 2009)) (emphasis in original).

Baptist Health cannot be a stranger to Kufel's contractual relationship with OBHG, because that relationship allegedly arose out of OBHG's with Baptist Health. Kufel alleges his "employment contract" is with OBHG, not with Baptist Health, and that he had a "contractual relationship [with] OBHG." (Compl. ¶¶ 13, 54.) In turn, OBHG has a contract with Baptist Health through which OBHG supplies physicians to Baptist Hospital. (*Id.* ¶ 14.) Kufel was one such physician. (*Id.* ¶ 15.) Thus, on the face of the Complaint, Kufel pleads a relationship between the Baptist Health-OBHG contract and the OBHG-Kufel contract. Kufel cannot simultaneously plead, even if conclusory, that "Baptist [Health] intentionally interfered" with a contract that Kufel alleges only exists because of the Baptist Health-OBHG contract. (*Id.* ¶ 76.)

Furthermore, Kufel's allegations give rise to the reasonable inference that Baptist Health has an "beneficial or economic interest in . . . [the] relationship" between OBHG and Kufel. *See Nimbus Techs.*, 484 F.3d at 1309. Kufel alleges that his job responsibilities under his contract with

17

4813-0205-0772

OBHG included "managing the OB Emergency Department" and "responding to emergency consultation requests from physicians." (Compl. ¶¶ 17–18.) It defies logic that Baptist Health would have no economic interest in the management of an emergency room at its affiliated hospital and would have no economic interest in the treatment that patients receive there. As such, the allegations defeat Kufel's claim for tortious interference, whether that claim is grounded in a contractual or business relationship. *See Kromka*, 706 F. Supp. 2d at 1289.

### 2.   Kufel fails to allege that Baptist Health procured a specific breach of his contractual relationship with OBHG.

Kufel cannot state a claim for tortious interference with a contractual relationship without alleging that Baptist Health procured a breach of Kufel's contract with OBHG. *Sourcing Solutions USA, Inc. v. Kronos America, LLC, TKS, S.A.*, Case No. 10-cv-23476, 2011 WL 13223514, at *3 (S.D. Fla. Jan. 26, 2011) ("Because Plaintiff has not alleged a breach or nonperformance of the contract, Plaintiff has failed to state a cause of action for tortious interference with a contractual relationship . . . ."); *see also Kromka*, 706 F. Supp. 2d at 1288 (dismissing tortious interference with contract claim with prejudice where plaintiff failed to allege a breach of their contract).

Kufel alleges that "upon Baptist's request, OBHG suspended his employment without pay" and "OBHG placed Dr. Kufel on administrative leave without pay[.]" (Compl. ¶¶ 50, 77.) Noticeably absent from Kufel's allegations, however, is how this conduct constitutes a breach of Kufel's employment agreement with OBHG. Without such allegations, Kufel cannot maintain a claim for tortious interference with a contractual relationship. For this reason, too, Kufel's tortious interference claim against Baptist Health should be dismissed.

### V.   KUFEL'S COMPLAINT IS A CLASSIC SHOTGUN PLEADING THAT FAILS TO MEET WELL-ESTABLISHED ELEVENTH CIRCUIT PLEADING STANDARDS.

Kufel begins each of his three counts with the paragraph, "Dr. Kufel incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein." (Compl. ¶¶ 56, 67, 74.) Thus, by the time Kufel's Complaint arrives at Count III for tortious interference, Kufel has incorporated all of the preceding paragraphs into that count. The Eleventh Circuit describes this kind of complaint as "[t]he most common" shotgun pleading: "a complaint containing multiple

counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F. 3d 1313, 1321 (11th Cir. 2015).

Kufel also fills his Complaint, as discussed above, with numerous allegations not obviously connected to the elements of any particular cause of action Kufel attempts to assert, legal conclusions masquerading as factual content, and contradictory allegations. The Eleventh Circuit describes this kind of complaint as "[t]he next most common" shotgun pleading: "a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. As the Eleventh Circuit held, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1322. As a result, complaints that contain these pleading errors do not comply with the notice requirements of Rules 8(a)(2) and 10(b), and courts should dismiss such complaints. *Drewes v. Cetera Fin. Grp., Inc.*, No. 19-CV-80531-KAM, 2020 WL 1875639, at *4 (S.D. Fla. Jan. 14, 2020) (dismissing a shotgun pleading that, among other deficiencies, incorporated all preceding allegations into each claim); *Brown v. Capital One Servs.*, LLC, No. 18-60669-CIV, 2019 WL 569842, at *2 (S.D. Fla. Jan. 9, 2019) (dismissing complaint as an improper shotgun pleading incorporating by reference all preceding paragraphs into each count) (Martinez, J.); *Platinum Contracting, LLC v. F/V Chasing Tail*, No. 18-10130-CIV, 2018 WL 6070529, at *5 (S.D. Fla. Nov. 20, 2018) (granting motion to dismiss in part on grounds raised *sua sponte* that complaint was a shotgun pleading) (Martinez, J.).

## **CONCLUSION**

For the reasons stated above, Baptist Health respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint in its entirety.

4813-0205-0772

Dated:  January 12, 2021                         Respectfully submitted,

                                                 FOLEY & LARDNER LLP
                                                 Michael P. Matthews
                                                 Florida Bar No. 63988
                                                 mmatthews@foley.com
                                                 Foley & Lardner LLP
                                                 100 North Tampa Street, Suite 2700
                                                 Tampa, FL 33602-5810
                                                 Telephone:  (813) 225-4131

                                                 Mark J. Neuberger
                                                 Florida Bar No. 982024
                                                 mneuberger@foley.com
                                                 Angelica L. Novick
                                                 Florida Bar No. 105069
                                                 anovick@foley.com
                                                 Ana Romes
                                                 Florida Bar No. 101179
                                                 aromes@foley.com
                                                 One Biscayne Tower
                                                 2 South Biscayne Boulevard
                                                 Suite 1900
                                                 Miami, FL 33131
                                                 Telephone:  (305) 482-8400

                                                 By: */s/ Michael P. Matthews*
                                                     Michael P. Matthews

                                                 *Counsel for Defendant Baptist Health South*
                                                 *Florida, Inc.*

4813-0205-0772